[Cite as *State v. Harris*, 2017-Ohio-7914.]

| | | |
|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

STATE OF OHIO

    Appellee

v.

ANDRE HARRIS

    Appellant

C.A. No.     28357

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.    CR 2014 11 3311

DECISION AND JOURNAL ENTRY

Dated: September 29, 2017

CARR, Judge.

{¶1}    Defendant-Appellant Andre L. Harris appeals from the judgment of the Summit County Court of Common Pleas. This Court affirms.

I.

{¶2}    In November 2014, Harris was indicted on two counts of domestic violence. Harris pleaded guilty to count one, and as part of the plea deal, count two was dismissed. The trial court placed Harris on two years of community control. The sentencing entry reflects that, "violation of any sentence imposed may lead to more restrictive sanctions for the Defendant, up to and including a prison term of 2 years."

{¶3}    In 2015, a capias was issued for Harris's arrest for violating the terms of his community control. At the plea hearing on the violation, the trial court informed Harris that if he pleaded guilty, the trial court could sentence him to two years in prison. Harris pleaded guilty and the trial court continued him on community control. At the time of sentencing, the trial court

reminded Harris that if he failed to comply with the conditions of community control, Harris would be subject to "[p]rison plus three years of reporting to a parole officer[]" (i.e. post-release control). The conditions included that Harris be screened for residential treatment, assessed for mental health issues, that he follow through treatment and counseling recommendations, and that he be subject to random urine screens.

{¶4} In early 2016, a warrant was issued for Harris to appear for a community control violation status conference. The order also required that Harris be screened for the SHARP program. At a hearing in April, Harris was continued on community control. In addition to the prior conditions, the trial court ordered that Harris enter and complete the SHARP program, complete community service hours, enter and complete a cognitive behavioral program, undergo mental health and anger management counseling, and seek and maintain full-time employment.

{¶5} In June 2016, the trial court issued a capias for Harris's arrest. The order stated that Harris failed to comply with the conditions of community control. Under the section for last known address, the entry listed "SHARP FACILITY – AWOL[.]" Harris was served with the capias on July 25, 2016. He appeared before the court at an initial hearing on July 29, 2016 and entered a plea of not guilty. In August 2016, the trial court held a hearing on the violation. Initially, Harris indicated he was going to plead guilty. His counsel noted that Harris realized he was wrong in leaving rehab and that he knew he was supposed to stay there. During the discussions, the trial court informed Harris that if he pleaded guilty, the trial court could sentence him to two years in prison. After detailing Harris's constitutional rights, Harris began to question whether he desired to plead guilty. Following a recess, and discussions with his counsel, Harris opted to proceed to a hearing. Harris's probation officer and Harris testified at

the hearing. Ultimately, the trial court found Harris guilty of the violation "for his failure to report to probation and going AWOL from SHARP[,]" and sentenced him to two years in prison.

**{¶6}** Harris has appealed, raising two assignments of error for our review.

II.

## **ASSIGNMENT OF ERROR I**

THE TRIAL COURT ERRED IN FINDING A VIOLATION OF ANY COMMUNITY CONTROL SANCTION AND IMPOSING A PRISON SENTENCE.

**{¶7}** Harris argues in his first assignment of error that the trial court erred in finding that Harris violated community control and in imposing a prison term. Specifically, Harris asserts that he did not have notice of the violation and that the hearsay evidence presented was insufficient to establish a violation. Additionally, Harris argues that, even if it was appropriate for the trial court to find Harris in violation, the trial court could not impose a prison sentence because the trial court failed to inform him of the specific prison sentence he would be subject to at prior community control violation hearings (and in related entries).

**Notice**

**{¶8}** "The court shall not impose a prison term for violation of the conditions of a community control sanction or revoke probation except after a hearing at which the defendant shall be present and apprised of the grounds on which action is proposed." Crim.R. 32.3(A). "'[B]ecause community control is the functional equivalent of what was formerly probation, the same due process protections that applied to probation violations [ ] apply to community control violations.'" *State v. Phillips*, 9th Dist. Lorain No. 14CA010669, 2016-Ohio-1142, ¶ 6, quoting *State v. Walton*, 9th Dist. Lorain No. 09CA009588, 2009-Ohio-6703, ¶ 5.

> "At the preliminary hearing, a probationer or parolee is entitled to notice of the alleged violations of probation or parole, an opportunity to appear and to present

evidence in his own behalf, a conditional right to confront adverse witnesses, an independent decisionmaker, and a written report of the hearing. The final hearing is a less summary one because the decision under consideration is the ultimate decision to revoke rather than a mere determination of probable cause, but the "minimum requirements of due process" include very similar elements:

'(a) written notice of the claimed violations of (probation or) parole; (b) disclosure to the (probationer or) parolee of evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation); (e) a 'neutral and detached' hearing body such as a traditional parole board, members of which need not be judicial officers or lawye[rs]; and (f) a written statement by the factfinders as to the evidence relied on and reasons for revoking (probation or) parole.'"

(Internal citation omitted.) *State v. Osborne,* 9th Dist. Lorain No. 15CA010727, 2017-Ohio-785, ¶ 7, *Gagnon v. Scarpelli*, 411 U.S. 778, 786 (1973), quoting *Morrisey v. Brewer*, 408 U.S. 471, 489 (1972); *see also Phillips* at ¶ 6.

{¶9}    With respect to notice of the violation, "this Court 'has previously rejected such due process arguments when an offender has attempted to raise them for the first time on appeal." *Osborne* at ¶ 8, quoting *Phillips*, 2016-Ohio-1142, at ¶ 7, citing *State* v. *Robinson*, 9th Dist. Wayne No. 02CA0008, 2003-Ohio-250, ¶ 6-7.  Harris did not object on this basis below and, thus, has forfeited all but plain error. *See* Crim.R. 52(B); *Phillips* at ¶ 7.  While Harris has mentioned the plain error standard in his brief, he has not developed a plain error argument addressing the facts of this case. *See State v. Anderson*, 9th Dist. Wayne No. 14AP0054, 2016-Ohio-7814, ¶ 12.

{¶10}  Further, even if we were to address the merits, Harris has not demonstrated error, let alone plain error.  Harris' probation officer testified at the final hearing that, the week prior to the hearing, he "serv[ed] [Harris] his violation" while Harris was being detained at the jail. There is nothing in the record to refute that.  Based upon the testimony and nature of the questioning, both Harris and Harris's counsel seemed aware of the nature of the alleged

violations at the final hearing. Moreover, prior to the hearing, when Harris still planned to plead guilty, Harris's counsel stated that Harris "realize[d] that what he did [was] wrong in that he left rehab and that he was supposed to stay there." Harris has not established that he did not have notice of the alleged violations.

**Hearsay**

{¶11} Harris additionally argues that the testimony of the probation officer was insufficient for the trial court to find Harris guilty of a community control violation as the testimony was hearsay. At the hearing, the trial court found Harris guilty for failing to report to probation and for going AWOL from SHARP. The trial court further found that the State met its burden of proof with respect to the allegation of Harris going AWOL from SHARP.

{¶12} "Evid.R. 101(C)(3) provides that the rules of evidence are not applicable to 'proceedings with respect to community control sanctions[.]'" *State v. Ricks*, 9th Dist. Medina No. 09CA0094-M, 2010-Ohio-4659, ¶ 11. We have also noted that "[t]he Ohio Supreme Court has held that, if hearsay is not objected to, it may properly be considered and given its natural probative effect as if it were at law admissible, the only question being with regard to how much weight should be given thereto." (Internal quotations and citations omitted.) *State v. Saffell*, 9th Dist. Wayne No. 15AP0041, 2016-Ohio-5283, ¶ 9. Notably, Harris's counsel raised no objections during the hearing.

{¶13} At the hearing, Harris's probation officer detailed some of the conditions of Harris's community control as well as Harris's history of prior non-compliance. The probation officer testified that in April 2016, Harris was ordered to enter and complete the SHARP program. The probation officer reported that Harris did enter the program. While Harris was in the program, the probation officer met with Harris for the purposes of encouraging him to follow

through with the program and informing him that he should report to the probation officer if he left. The probation officer averred that Harris did not successfully complete the SHARP program as he went AWOL from the facility. The probation officer clarified that he was notified that Harris had left the facility via fax, email, and phone call. After Harris left the SHARP program, he did not report to the probation officer at any time.

{¶14} Harris also testified in his own defense. Harris offered testimony to attempt to explain why he left the SHARP program and relayed problems he was experiencing with other residents there. Nonetheless, Harris admitted that he left the program and failed to report to his probation officer.

{¶15} Some of the alleged hearsay statements Harris challenges on appeal relate to behaviors that occurred prior to him leaving SHARP. There is nothing in the record that suggests that that the violations at issue related to those statements or played any role in the trial court's findings. As Harris himself admitted to leaving SHARP and admitted to failing to report to his probation officer, and given that Harris's counsel did not object to the probation officer's testimony, *see Saffell* at ¶ 9, we can only conclude that the trial court was presented with sufficient evidence that Harris violated the terms of his community control.

**Prison Sentence**

{¶16} Finally, Harris argues that, even if the trial court did not err in finding him in violation of community control, the trial court did err in sentencing Harris to prison. Harris maintains that, because the trial court failed to notify Harris of the specific prison sentence that would be imposed at the prior community control violation hearings (and entries), the trial court could not sentence Harris to prison.

{¶17} Harris's argument is based upon *State v. Brooks*, 103 Ohio St.3d 134, 2004-Ohio-4746, and *State v. Fraley*, 105 Ohio St.3d 13, 2004-Ohio-7110. In *Brooks*, the Supreme Court of Ohio held that, "[p]ursuant to R.C. 2929.19(B)(5) and 2929.15(B), a trial court sentencing an offender to a community control sanction must, at the time of the sentencing, notify the offender of the specific prison term that may be imposed for a violation of the conditions of the sanction, as a prerequisite to imposing a prison term on the offender for a subsequent violation." *Id.* at paragraph two of the syllabus. *Fraley* addressed a different scenario. In *Fraley*, the Court had to determine "the timing of notification required by the statute in order to impose a prison term when an offender violates his community control sanctions multiple times." *Id.* at ¶ 15. At Fraley's original sentencing hearing, he was not notified of the possible prison sentence that could be imposed if he violated community control. *See id.* at ¶ 19. However, at Fraley's third violation hearing, he was properly notified, and, thus, the Court concluded that Fraley could be sentenced to prison when he was found to have violated community control a fourth time. *Id.* The Court held that, "pursuant to R.C. 2929.19(B)(5) and 2929.15(B), a trial court sentencing an offender upon a violation of the offender's community control sanction must, at the time of such sentencing, notify the offender of the specific prison term that may be imposed for an additional violation of the conditions of the sanction as a prerequisite to imposing a prison term on the offender for a subsequent violation." *Id.* at ¶ 18.

{¶18} Following *Fraley,* courts of appeals have struggled to determine whether, under *Fraley,* a notification is required at every violation sentencing hearing if proper notice has already been given. *See, e.g., State v. Snoeberger*, 2d Dist. Montgomery No. 24767, 2013-Ohio-1375, ¶ 24 ("*Brooks* and *Fraley* do not clearly resolve whether the trial court must repeat its

notification of the possible prison term for a community control violation at each revocation hearing if proper notice has already been given.").

**{¶19}** In addressing *Fraley*, this Court has concluded that,

> a trial court need not notify a defendant at his original sentencing hearing of the specific prison sentence he will receive for violating community control. But, in order to impose a term of incarceration for a community control violation, the trial court must have previously notified the defendant of the specific prison term he would receive for such a violation. For example, when a trial court sentences a defendant to community control, it may notify the defendant of the specific prison term it will impose for a violation or it may wait to provide such notification. If a defendant appears before a trial court on his first violation of community control and he was not notified of the specific sentence at his original sentencing hearing or at a subsequent proceeding, then the trial court may not sentence him to a term of incarceration. Rather, the trial court may continue the defendant on community control and notify him that another violation will result in the imposition of a specific prison term. Then, if the defendant violates a second time the trial court may impose said term of incarceration.

*State v. McWilliams,* 9th Dist. Summit No. 22359, 2005-Ohio-2148, ¶ 9.

**{¶20}** In light of the foregoing, we agree with the districts that have determined that "a trial court is not required to re-advise the defendant over and over again at each and every hearing that may occur thereafter." (Internal quotations and citations omitted.) *State v. Holloway*, 12th Dist. Butler No. CA2016-08-152, 2017-Ohio-4039, ¶ 12. "[N]otification at the original sentencing hearing, or any subsequent community control violation hearing is legally sufficient." *Id.*

**{¶21}** Here, Harris has not challenged the notification he received at the original sentencing hearing and included in the original sentencing entry. Instead, he has only argued that the trial court had to re-notify him at each subsequent violation hearing in order to be authorized to sentence him to prison at the sentencing hearing at issue. As we have concluded otherwise, and given his limited argument, we overrule his argument.

**{¶22}** Harris's first assignment of error is overruled.

## ASSIGNMENT OF ERROR II

MR. HARRIS WAS DENIED HIS FEDERAL AND STATE CONSTITUTIONAL RIGHTS TO EFFECTIVE ASSISTANCE OF COUNSEL[.]

**{¶23}** Harris argues in his second assignment of error that he received ineffective assistance of counsel.

**{¶24}** In order to prevail on a claim of ineffective assistance of counsel, Harris must show that his "counsel's performance fell below an objective standard of reasonableness and that prejudice arose from counsel's performance." *State v. Reynolds*, 80 Ohio St.3d 670, 674 (1998), citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984). "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland* at 686. Thus, a two-prong test is necessary to examine such claims. First, Harris must show that counsel's performance was objectively deficient by producing evidence that counsel acted unreasonably. *State v. Keith*, 79 Ohio St.3d 514, 534 (1997), citing *Strickland* at 687. Second, he must demonstrate that but for counsel's errors, there is a reasonable probability that the results of his trial would have been different. *Keith* at 534.

**{¶25}** Specifically, Harris asserts that counsel initially admitted to the charges prior to the hearing, failed to object to the probation officer's testimony, and failed to argue that the trial court had to continue community control because the trial court failed to inform Harris of the sentence he faced at prior community control violation determinations. Harris also argues that the charges were not identified in the record, service was not shown, the rules and regulations were not introduced or judicially noticed, and prior entries of the trial court were not judicially noticed. With respect to this latter group of arguments, Harris has not explained what his

counsel failed to do or how his counsel was deficient. *See id.* Instead, Harris has merely listed factual statements. Thus, we see no merit to that portion of his argument.

{¶26} As to Harris's assertion that counsel was ineffective for first admitting to a violation and then requesting a hearing after consulting with Harris, Harris has not demonstrated counsel's ineffectiveness. Harris was set to plead guilty and so it would seem logical that counsel could set forth facts that would amount to a violation and then explain why Harris should be continued on community control. Further, Harris has not demonstrated that counsel's remarks played any role in the outcome of the hearing. Thus, Harris has likewise not demonstrated prejudice. *See Keith* at 534.

{¶27} With respect to counsel's failure to object to the probation officer's testimony, we have already noted that the Rules of Evidence do not apply to community control violation hearings. *See* Evid.R. 101(C)(3). Further, Harris himself testified to facts that amounted to a violation. Thus, even if counsel should have objected, any error would be harmless in light of Harris's own testimony. *See* Crim.R. 52(A); *Keith*, 79 Ohio St.3d at 534.

{¶28} Finally, with respect to Harris's assertion that counsel should have argued that the trial court could not impose a prison sentence given that the trial court did not provide the requisite notice at the prior community control violation determinations, we have concluded that repeat notices are not required. Thus, Harris has not demonstrated that counsel's performance fell below an objective standard of reasonableness. *Reynolds,* 80 Ohio St.3d at 674.

{¶29} In light of Harris's limited argument on appeal, we overrule Harris's second assignment of error.

III.

{¶30} Harris's assignments of error are overruled. The judgment of the Summit County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

DONNA J. CARR
FOR THE COURT

SCHAFER, P. J.
CALLAHAN, J.
CONCUR.

APPEARANCES:

MARK H. LUDWIG, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and HEAVEN DIMARTINO, Assistant Prosecuting Attorney, for Appellee.